IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY E. HAAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04-CV-00463-F |
| | ) | WO |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Following administrative denials of applications for disability insurance benefits under Title II of the Social Security Act , 42 U.S.C. §§ 401 *et seq*., and supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq*., Mary Haas ("Haas") received a requested hearing, represented by counsel, before an administrative law judge ("ALJ"), who rendered an unfavorable decision on October 21, 2003.  Because the Appeals Council rejected  review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"), and this judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c).  After careful scrutiny of the record and briefs,  the Magistrate Judge concludes that the Commissioner's decision should be affirmed.

### I.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.    The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must be

considered conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is less than a preponderance; instead, it is considered such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.2d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Because substantial evidence is "more than a scintilla," *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987), it "must do more than merely create a suspicion of the existence of the fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding the contrary evidence. *McCruter v. Bowen*, 791 F. 2d 1544, 1548 (11th Cir. 1986).

The court must examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Commissioner's decision will be reversed if it reflects the application of incorrect law or insufficient reasoning to make the determination. *Keeton v. Department of Health & Human Servs.*, 21 F. 3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Born in 1973, Haas has not engaged in substantial gainful work  since the alleged onset of disability on January 25, 1998. She applied unsuccessfully for disability benefits in 1999 and protectively filed the pending applications on September 21, 2000. She has "an eighth grade education and some form of nursing school" with work experience as a stable hand in the farm

industry, waitress, certified nursing assistant, and cashier.[1]

The ALJ determined that Haas has a "combination of impairments considered 'severe: asthma, obesity, fibromyalgia,[2] osteoarthritis, and major depression." He concluded, however, that "[t]hese medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4, considered individually or in combination with other impairments." Allegations by Haas regarding her limitations were deemed "not totally credible." Finding Haas unable to perform any of her past relevant work, the ALJ determined nonetheless that she has the residual functional capacity ("RFC") to perform a significant though not a full range of light work – including, for example silver wrapper and hand packager of plastic products – existing in significant numbers in the national economy. Accordingly, the ALJ found that Haas suffered no "disability" as defined in the Act, at any time through the date of [his] decision."[3]

### III.  ISSUES

Attacking the ALJ's assessment of her residual functional capacity,[4] Haas specifies three

---

[1]R. 97, 17, 19.

[2]The fibromyalgia syndromes (myofascial pain syndrome, fibromyositis) are a group of disorders characterized by achy pain and stiffness in soft tissues, including muscles, tendons (which attach muscles to bones), and ligaments (which attach bones to each other). The pain and stiffness (fibromyalgia) may occur throughout the body or may be restricted to certain locations, as in the myofascial pain syndromes. *The Merck Manual of Medical Information* 250 (Home ed.1997).

[3]R. 26-28. The ALJ's disability analysis followed the five-step sequential evaluation process summarized in *Davis v. Shalala*, 985 F. 2d 528, 532 (11th Cir. 1993) and *Cannon v. Bowen*, 858 F.2d 1541 (11th Cir. 1988). *See* R. 18.

[4]In sequential evaluation steps four and five, the Secretary makes an assessment of a claimant's residual functional capacity, in light of a claimant's past work, experience, age, and education. *See* 20 C.F.R. §§416.920(e) and 416.920(f); *Davis v. Shalala*, 985 F. 2d 528, 532 (11th (continued...)

issues:

> (1)     Whether the ALJ erred as a matter of law by failing to obtain medical records from Dr. Gary Smith[5];
>
> (2)     Whether the ALJ erred by failing to properly refute the opinion of  Dr. Hornsby, [her] treating physician[6];
>
> (3)     Whether the ALJ failed to properly evaluate Ms. Haas' obesity [in combination with her other severe impairments]

Each issue  relates to the ultimate inquiry on judicial review:   whether the Commissioner's disability decision is supported by proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 672 (11th Cir. 1987).

## IV.  DISCUSSION

### A.     Obtaining Mental Health Records

Because the consultative psychological evaluation of Ann L. Jacobs, Ph.D., a licensed psychologist ("Dr. Jacobs"), reported her counseling with Dr. Gary Smith for help "in dealing with problems related to her son's molestation," Haas claims error in the ALJ's failure to obtain these records which "could directly relate to Ms. Haas' diagnosis of 'Major Depression' and show whether or not a diagnosis of 'single episode' is accurate."[7]  Haas acknowledges  the ALJ's duty

---

[4](...continued)
Cir. 1993).

[5]Haas contends that  mental health records from Dr. Gary Smith  "could directly relate to [her] diagnosis of 'Major Depression'" and its limitations on her ability to work

[6]Cited specifically are the opinions by Dr. Hornsby (a) that Haas would likely be absent from work due to her impairments or treatment for more than four days per month and (b) that Haas experiences pain to such an extent to cause distraction from tasks or total abandonment of tasks.

[7]*Plaintiff's Brief* ("Pl.'s Br.") at 5 (Doc. 10, Oct. 8, 2004).

to obtain her medical history only for the twelve months prior to her application in 1999,  *see* 20

C.F.R. §404.1512(d), she argues: "there is reason to believe that the development of the earlier

period is necessary . . .  she alleged disability as of January 25, 1998 . . . Therefore, records for one

year prior to 1998 would be necessary in order to present a longitudinal picture of Ms. Haas'

impairments."[8]

The Commissioner responds:

> There is no evidence that she continued therapy with Dr. Smith after 1997.[9]  Thus,
> the counseling she received was not material to the period under consideration, i.e.
> January 25, 1998 and following, and the ALJ was under no duty to request the
> records.. . .  The information from Dr. Smith's counseling sessions was in existence
> at the time of Plaintiff's application,  she has made no attempt to show good cause
> for her failure to provide the evidence which she states 'could' impact the ALJ's
> decision.  In fact, Plaintiff does not even speculate about why the information is
> important . . .The evidence in this case was . . . sufficient for the ALJ to make a
> disability determination and more recent mental health evidence exists.[10]

Notwithstanding the ALJ's duty to develop the record fully and fairly,[11] the claimant's

burden of proving her disability requires that she produce the substantiating evidence.[12]  The ALJ

---

[8]*Plaintiff's Reply Brief*  ("Pl.'s Reply Br.") at 4 (Doc. 16, Nov. 24, 2004).

[9]This assessment is not supported by the court's review of the record. Haas testified during
the hearing that she has "been on Prozac since 1997" (R.51).  In documentation submitted when she
requested a hearing, Haas indicated September 20, 2001 as the date of her last session with Dr.Smith
and October 4, 2001 as her next scheduled appointment. (R. 168).

[10]*Memorandum In Support Of Commissioner's Decision* (" Def.'s Br.") at 4-5 (Doc. 11, filed
Nov. 2, 2004).

[11]*See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995); *Cowart v. Schweiker*, 662
F.2d 731, 735-736 (11th Cir. 1981) (describing the ALJ's duty to "scrupulously and conscientiously
probe into, inquire of, and explore for all the relevant facts").

[12]*See* 20 C.F.R. §404.1512 (a):

*In general*, you have to prove to us that you are blind or disabled.  Therefore, you

(continued...)

5

must develop the claimant's "complete medical history for at least the 12 months preceding the month in which [she] files [her] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [her] disability began less than 12 months before [the filing of her] application. 20 C.F.R. §404.1512(d); *see also Ellison v. Barnhart*, 355 F. 3d 1272 (11th Cir. 2003).  Courts evaluating the necessity for remand to obtain additional records "are  guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F. 3d at 935  (internal quotations omitted).

Guided by these standards, the court readily rejects the contention by Haas that the ALJ failed erroneously  to develop her medical history with  records for a period earlier than the 12 months  prior to her  disability application.   Represented in the administrative process by counsel, Haas offers no explanation for her own failure to present Dr. Smith's 1997 or other relevant records for her treatment.   Nor does she demonstrate the necessity of remand due to  unfair prejudice resulting from the ALJ's  failure to obtain these records.   While "[t]he lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits," this:

---

[12](...continued)
must bring to our attention everything that shows that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.
*and*
20 C.F.R. §404.1512 (c):  *Your responsibility*.  You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case.

do[es] not mean that a remand is warranted any time a claimant alleges that the ALJ neglected to complete the record.  The likelihood of unfair prejudice to a claimant may arise, however, where...the evidentiary gap involves recent medical treatment which the claimant contends supports her allegations of disability, or the receipt of vocational services.

*Brown*, 44 F. 3d at 936,  n. 9.

Though the record did not document Dr. Smith's pre-1998 treatment of Haas, it did include substantial evidence relevant to the subsequent status of her mental health and  resulting functional limitations:  the diagnosis and treatment by her physicians for depression;   a consultative psychological  examination by Dr. Jacobs in December 2000; and Psychiatric Review Technique forms completed in March 2000 and January 2001 by State Agency psychological consultants.[13] Additionally,  the ALJ found that the medical evidence indicated *major depression* as a  severe impairment for Haas, and his formulation of her RFC considered this impairment and its limitations.[14]   In sum, the record in its entirety does not disclose the type of evidentiary gap in the mental health treatment records which dictates remand in order to obtain and evaluate the records in controversy.

### B.   Rejection of Treating Physician's  Opinions

####       1. *Opinions and Contentions*

Haas disputes the adequacy of the ALJ's stated reasons for rejecting the opinions of her treating physician, Dr. Kevin Hornsby, regarding her exertional limitations and pain.  The ALJ must accord substantial weight to a treating physician's opinion, diagnosis and medical evidence  unless there is good cause to do otherwise.  *Phillips v. Barnhart,* 357 F. 3d 1232, 1241(11th Cir. 2004);

---

[13]R. 233-260.

[14]R. 24, 26,  28.

*Lewis v.* Callahan, 125 F.3d 1436, 1439- 41 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).[15]  "Good cause" exists if  the treating physician's opinion is not bolstered by the evidence,  is conclusory or inconsistent with  the physician's own medical records, or  if the evidence supports a contrary finding.  *Phillips*, 357 F. 3d at 1241-42.

The ALJ expressly rejected Dr. Hornsby's opinions "as described  in [the] Physical Capacities Evaluation and Clinical Assessment of Pain dated April 10, 2003."[16]  He summarized correctly the exertional limitations specified for Haas but noted that Dr. Hornsby "gave no opinion as to the duration of these extraordinary limitations":

> Dr. Hornsby reported that the most reasonable lifting and/or carrying expectation for [Haas] was five pounds occasionally to one pound frequently . . .[D]uring an eight-hour workday, [Haas] can . . . stand or walk for one hour. . . .  could never perform fine manipulation . . . can rarely perform  pushing and  puling movements (arm and/or leg controls);  climbing (stairs and ladders); and balancing; and bending and/or stooping movements. . . . [Haas] would likely be absent from work more than four days per month.[17]

Similarly, the ALJ observed that Dr. Hornsby's pain assessment for Haas expressed "no opinion as to the duration of [the] level of pain and [the] degree of side effects" he summarized:

> Dr. Hornsby reported that [Haas] had  pain to such an extent as to be distracting to adequate performance of daily activities or work. . . . [P]hysical activity, such as walking, standing, sitting, bending, stooping, moving of extremities, increased the . . . pain to such a degree as to cause distraction from tasks or total abandonment of task.. . . [D]rug side effects can be expected to be severe and to limit effectiveness

---

[15]S*ee also* 20 C.F.R. § 404.1527 (d);  *Elam v. Railroad Retirement Board*, 921 F. 2d 1210, 1215 (11th Cir. 1991) ( ALJ must give "explicit and adequate reasons for rejecting the opinion of a treating physician")

[16]R.25, referencing Ex. 14F (R. 269) and Ex. 15F (R. 270).

[17]R.23. As the basis for the restrictions imposed, Dr. Hornsby reported "lower back and spine related to a lifting injury." Ex.14F (R.269).

due to distraction, inattention, and drowsiness.[18]

The ALJ stated clearly and concisely his reasons for rejecting these opinions by Dr. Hornsby of Haas' disabling pain and exertional limitations:

> I find that both of the above-opinions [Physical Capacities Evaluation and the Clinical Assessment of Pain] are inconsistent with his office notes; consultative examination findings; objective medical tests (the back was within normal limits on magnetic resonance imaging - MRI).  Dr. Hornsby's opinion is inconsistent with the broad range of activities of daily living, which the claimant performs, i.e., caring for her children and pets, driving, playing with her daughter, helping her son with his homework, taking him on field trips, attending school functions for her son, helping with the school Christmas party, sweeping, vacuuming, cooking, and shopping at the grocery store.  I find that the claimant's activities of daily living are not the same of those of a disabled individual.[19]

Thus, the court proceeds to examine the contention by Haas that these articulated reasons  are meritless because   (1) Dr. Hornsby's office notes directly support his opinion, (2) his findings are the same as the consultative examination findings, and (3) objective medical tests are not helpful with  a  diagnosis  of  fibromyalgia."[20]    The  conclusion  is  compelling,  as  now  discussed,  that substantial evidence does support  the ALJ's rejection of the treating doctor's opinions.

### 2.  *Evidentiary Analysis*

#### (a)  *Inconsistency with Dr. Hornsby's Office Notes*

According to Haas, the ALJ "never discusses any inconsistencies" but instead "quotes six

---

[18]R.23; see Ex. 15F (R. 270).

[19]R.25.

[20]*Pl.'s Br.* at 6.

office visit notes from Dr. Hornsby" which are all consistent with the PCE and the pain form.[21]  The record shows otherwise.  The ALJ pinpointed as inconsistent with Dr. Hornsby's reported pain and exertional limitations for Haas both his April 10, 2003 office record, in which he reported that she "could perform light work with no lifting over thirty pounds"and  his office notes for  July 7, 2003, reflecting that she "had <u>no complaints</u>."[22]

 To underscore the inconsistency between Dr. Hornsby's cited office notes and his reports on the PCE and pain forms, the ALJ cited the physical examination for Haas on June 18, 2003, which "showed nothing that would preclude light work" and the objective findings upon her examination  just 19 days later.[23] In fact, the medical record for the earlier exam does not express an opinion on  Haas' fitness for any level of work; instead, the ALJ's assessment appears to be based on the absence of any significant abnormalities indicated by Dr. John Marsella following his physical examination.[24] When  Dr. Hornsby examined Haas barely  three  weeks  later, he also reported, as discussed by the ALJ, no significant abnormalities,  no musculoskeletal deficits, and a full range of motion in all joints.[25]

Glaringly evident is the inconsistency between Dr. Hornsby's recorded lifting restrictions

---

[21]*Pl.'s Br.* at 7.

[22]R. 25, referencing Ex. 21F for these office notes. (emphasis included).

[23]R.24, referencing the outpatient exam by Dr. Marsella at Southeast Alabama Medical Center,  triggered by Haas' complaints of lower back and spinal pains (Ex.22F, R. 296).

[24]As correctly summarized by the ALJ, Dr. Marsella reported that Haas had "free range of motion in all joints; free range of motion in the cervical, thoracic, and lumbosacral spine; joints were non-tender, not swollen and non-erythematous; and muscle tone was abnormal.  He reported that cranial nerves were intact, motor was 5/5 in the upper and lower extremities, sensory grossly intact, and negative straight leg raise." R. 24;  Ex. 22F at R. 303-305.

[25]R.25.

for Haas: *"no lifting over 30 pounds for one week"* as indicated in his office notes following her examination on April 10, 2003,[26]and *"five pounds occasionally to one pound frequently"* as indicated on the PCE form completed on the same date..  Conceding at least this inconsistency, Haas argues:

> Due to the fact that only this one line displays inconsistency and it was transcribed by another person, it is probably a scrivener's error" and "[b]ecause this office note is transcribed, and the PCE completed was handwritten, the PCE should be awarded more weight than the one line of the transcribed note" and concludes that the "if the ALJ was in doubt regarding the validity of Dr. Hornsby's PCE, he should have requested clarification from Dr. Hornsby regarding the inconsistency."[27]

The suggested clerical error is a bootless argument in light of additional inconsistencies between Dr. Hornsby's notes for this office examination and his reported opinions on the PCE and pain forms.  As part of his "plan" to alleviate the worsening "chronic low back pain" reported by Haas on this occasion, Dr. Hornsby advised: "[r]est on heating pad for 1 to 3 days until the pain subsides then *light duty* avoiding a lot of back motion and not lifting over 30 pounds for one week".[28] Additionally,  Dr. Hornsby  opined on the PCE form that Haas can *never* perform fine manipulation (finger dexterity), a conclusion not supported by his office notes.[29]  In sum, the court

---

[26]R. 295.

[27]*Pl.'s Reply Br.* at 9.

[28]R. 295.(emphasis added)

[29]R. 269. In rejecting this opinion, the ALJ  found that the "fine manipulation" limitation "has no relationship to the 'lifting injury' and is contraindicated by Dr. Hornsby's own repeated office note findings". (R. 26).  Haas simply errs in her contention that the limitation is documented in Dr. Hornsby's notes for her examination on October 8, 2002. Her reported complaints then of pain in her fingers and elsewhere are insufficient to ground an opinion that she can never perform tasks requiring finger dexterity.

finds  substantial evidence supporting  the ALJ's rejection of Dr. Hornsby's opinions based on inconsistency with his own office notes.

### (b)  Inconsistency with Consultative Examination Findings

Similarly supported by substantial evidence is the ALJ's  rejection of Dr. Hornsby's PCE and pain form opinions  as inconsistent with "consultative examination findings".[30]  The ALJ cited two consultative reports tendered at the request of DDS– the December 2000 psychological evaluation performed by Ann L. Jacobs, Ph.D., and the  June 10, 2003  examination performed by Dr. David H. Arnold, a family practitioner.  The ALJ also referenced reports rendered by examining physicians who conducted evaluations upon referral from Haas' treating physicians–  a June 18, 2003 report by Dr. John J. Marsella  and an August 22, 2000  evaluation  by Dr. Parks W. Pratt, a rheumatologist.

Haas contends that Dr. Hornsby's "findings are the same as the consultative examination findings" but close analysis  reveals the inconsistency found by the ALJ.   Rather than placing an "almost identical limitation on Ms. Haas as the PCE from Dr. Horsnby", as Haas claims,  Dr. Marsella  merely recorded the chief complaints and limitations handwritten by Haas.[31]  Similarly, Dr. Arnold did not opine that Haas "could sit for several hours; she can stand for up to an hour"; instead, Haas described these limitations to the doctor.[32]   Likewise,  Dr. Jacob's report that employers viewed Haas "as a risk" because of her status "on numerous  medications" is attributable

---

[30]*Pl.'s Br.* at 6.

[31]*Pl.'s Br.* at 9; R. 298-303.

[32]*Pl.'s Br.* at 11; R. 280.

solely to her own perception.[33]

No other physician opined that Haas had impairments which posed the degree of functional limitations set forth in Dr. Hornsby's PCE and pain forms. Moreover, the ALJ's assessment of her subjective complains finds support in the records of these consultative reports. For example, on her June 10, 2003 examination by Dr. Arnold, the nurse noted that Haas had "no trouble going from the chair to the exam table" but during the doctor's examination, "she showed marked difficulty climbing onto the exam table with much moaning." With "minimal touch of the lower back bilateral, [it] caused the patient to cray [sic] out in pain and to jump from the table." Dr. Arnold tempered his diagnosis – chronic low back pain due to muscle spasm, asthma, arthralgias, depression and obesity – with his judgment that "the symptoms of pain during the exam are out of proportion to the physical findings and there are *inconsistencies in her reported abilities to move.*"[34] (emphasis added).

### (c) Inconsistency with Activities of Daily Living

With respect to the ALJ's finding of inconsistencies between her daily activities and Dr. Hornsby's opinions of her functional limitations and pain, Haas argues first that performance of everyday activities of short duration does not disqualify a claimant from disability, and next that she also reported restrictions in performing these activities.

The record establishes that Haas performs a wide range of household chores with breaks or minimal assistance from her mother or son. She cooks, does laundry, washes dishes, vacuums and

---

[33]*Pl.'s Br.* at 11; R. 229.

[34]R. 282.

sweeps floors, feeds pets; shops for groceries; handles her own money; assists with her children's homework and attends school functions although her mother monitors the children if she is in pain or drowsy; and drives short distances[35]  Dr. Jacobs concluded in her psychological evaluation that Haas "is able to manage the house work, sometimes by dividing the activities over several days."[36] That an ALJ may consider a claimant's daily activities is unquestioned. S*ee* 20 C.F.R. §404.1520(e) and *Macia v. Bowen*, 829 F. 2d 1009, 1012 (11th Cir. 1987).  The court concludes that substantial evidence supports this ALJ's determination that the broad range of daily activities by Haas is inconsistent with Dr. Hornsby's opinions and  "not the same of those of a disabled individual."[37]

### (d) Inconsistency with Objective Medical Tests

With respect to the ALJ's finding of inconsistency between Dr. Hornsby's opinions and the objective medical tests, Haas contends correctly that such tests "are not helpful with a diagnosis of fibromyalgia" because "fibromyalgia is a syndrome that lacks physical and laboratory findings (signs)."[38]   The absence of inflammation and x-ray abnormalities contribute to difficulties in assessing the existence and severity of fibromyalgia, and  the disease is detectable not through diagnostic tests but rather through medically accepted clinical techniques that show the existence of an impairment.[39]

---

[35]R. 138, 149, 156, 157, 158, 230;  R. 157, 230; R. 52, 134, 230;  R. 46, 47, 230.

[36]R. 232.

[37]R. 25.

[38]*Pl.'s Reply Br.* at 5.

[39] See *The Merck Manual of Medical Information* 250-51(Home ed. 1997); *Stewart v. Apfel*,
(continued...)

The ALJ's error is not reversible, however, because his rejection of the treating physician's opinion finds substantial evidentiary support in the other reasons cited, as discussed *supra. See Moore v. Barnhart*, 405 F. 3d 1208 (11th Cir. 2005)(affirming ALJ's credibility determination based not solely on the lack of objective findings for fibromyalgia but instead on inconsistencies with claimant's daily activities).

### C.   Evaluation of Obesity

Although the ALJ identified her obesity as a severe impairment, Haas claims reversible error in his failure to address the interplay between her obesity and other severe impairments, including her osteoarthritis. The combination, she argues, limits her in fine manipulation with hands and fingers, lifting and working on a regular and continuing basis. The Commissioner responds that no treating or examining physician assigned obesity-related functional limitations, and the ALJ properly "formulated his residual functional capacity finding ... based upon the record as a whole."[40]

Judicial analysis is informed by SSR 02-01p, 2002 SSR Lexis 1, at*15, enacted in 2002 to supersede a 2000 policy guideline, which provides, in pertinent part:

We will not make assumptions about the severity or functional effects of obesity

---

[39](...continued)
No. 99-6132, 2000 U.S. App. LEXIS 33214, *8-*9 (11th Cir. Dec. 20, 2000)( "A treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader. . ."); *see also Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1335 (M.D. Fla. 2003) ( "Fibromyalgia is unique and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work."); *Bennett v. Barnhart*, 288 F.Supp.2d 1246, 1250 (N.D. Ala. 2003); *Bruet v. Barnhart*, 313 F. Supp. 2d 1338 (M.D. Fla. 2004)(finding error in ALJ's rejection of treating physicians' opinions regarding claimant's inability to participate in gainful employment due to her active myofascial syndrome, fibromyalgia, and claimant's inability to meet the exertional strength demands of sedentary work).

[40]*Pl.'s Br.* at 14; *Def.'s Br.* at 9.

15

combined with other impairments.  Obesity in combination with another impairment may  or  may  not  increase  the  severity  or  functional  limitations  of  the  other impairment.  We will evaluate each case based on the information in the case record.

Assessment  of  residual  functional  capacity  ("RFC")   falls  squarely  within  the  ALJ's province, see 20 C.F.R. §404.1545, but the formulation must be based upon all relevant evidence of the claimant's ability to work despite impairments.  *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997).  Obesity is no longer a listed impairment, and  SSR 02-1p does not permit the ALJ, or this court on review, to make assumptions about the functional effects of obesity combined with other impairments.  Upon finding that a claimant has a severe  impairment which can be exacerbated in the workplace by her obesity, the ALJ has a duty to explain whether and how he assessed any evidence that the combination of such impairments would affect adversely her ability to perform routine movement and necessary physical activity [41]

In this case the ALJ does not discuss explicitly the combined effects of the severe impairments he determined for Haas, particularly her obesity and osteoarthritis, on her RFC for past work or other work.  This failure amounts to harmless error because the  record provides no basis for any claim of the requisite functional limitations arising  from the combination of Haas' obesity and other severe   Absent is any such relevant opinion by a treating or examining physician, including Dr. Hornsby, who does not rest any of his opinions about Haas' functional limitations on her obesity in combination with other severe impairments.

---

[41]*See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) 85);  SSR 02-01p, 2002 SSR LEXIS 1,at *18 ("As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations"); *Wilson v. Barnhart*, 284 F.2d 1219, 1224-25 (11th Cir. 2002); *Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993) ( requiring the ALJ to make specific and well-articulated findings as to the combined effect of all impairments); *McCray v. Massanari*, 175 F.Supp 2d 1329, 1336 (M.D.Ala. 2002).

## V.   CONCLUSION

For the reasons explained in this *Recommendation*, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence and proper application of the relevant law, and therefore, **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

*It is further ORDERED that the parties shall file any objections to the said Recommendation by September 13, 2005.* Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of August, 2005.

/s/ Delores R. Boyd
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE